UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-14017-CIV-SMM
(Consent Case)

**TUNA FAMILY MGMT INC.**, *et al.*,

    Plaintiffs,

v.

**ALL TRUST MANAGEMENT INC.**, *et al.*,

    Defendants.
_____/

**ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before me upon Plaintiffs' Motion for Preliminary Injunction ("Motion"). (DE 95).[1] I have reviewed the Motion, the response ("Response") (DE 96), the reply ("Reply") (DE 101) and the record in this case. Being otherwise duly advised, the Motion is **DENIED** for the reasons stated herein.

**BACKGROUND**[2]

The parties' disputes arise from Plaintiffs' sale of a restaurant business to Defendants in November 2018. DE 83 at ¶¶13-18, 38-44, 53-54. Plaintiffs initially brought this action on January 16, 2020. DE 1. On March 16, 2021, Plaintiffs filed their ten-count Third Amended

---

[1] On May 15, 2020, the parties jointly filed a Consent to Proceed Before United States Magistrate Judge ("Consent"). DE 35. Pursuant to the Consent, United States District Judge Donald M. Middlebrooks issued an Order of Reference referring the case to me for all further proceedings including trial and entry of judgment pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73, and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida. DE 36.

[2] The background facts set forth herein are largely drawn from undisputed facts in the parties statements of facts pertaining to their respective motions for partial summary judgment. DE 86-2; DE 91; DE 94; DE 103; DE 109; DE 116.

Complaint, seeking among other things, damages and injunctive relief and alleging the following causes of action:

| Count | Cause of Action | Against |
|---|---|---|
| 1. | Infringement of U.S. Trademark No. 4670129 – 15 U.S.C. § 1114(1) | Sidharth Sethi<br>Mad Twist, LLC<br>All Trust Management Inc. |
| 2. | Unfair Competition and False Designation of Origin – 15 U.S.C. § 1125(a) | Sidharth Sethi<br>Mad Twist, LLC<br>All Trust Management Inc. |
| 3. | Fraud | Sidharth Sethi<br>Amit Sethi |
| 4. | Breach of Promissory Note - $1.75MM | Sidharth Sethi<br>SamJ Investments Inc.<br>Italeats Inc. |
| 5. | Breach of Absolute Unconditional Continuing Gty Agmt - $1.75MM | Sidharth Sethi<br>Amit Sethi |
| 6. | Breach of Guaranty Agreement - $490k | Sidharth Sethi |
| 7. | Declaratory Judgment (that Plaintiff Tuna Family Mgmt Inc. is entitled to terminate License Agreement) | All Trust Management Inc. |
| 8. | Breach of License Agmt | All Trust Management Inc. |
| 9. | Breach of Promissory Notes | Mad Twist LLC<br>All Trust Management Inc. |
| 10. | Tortious Interference with a Business Relationship | Sidharth Sethi<br>Amit Sethi |

DE 83.[3] For their part, Defendants seek damages, among other relief, for fifteen (15) counterclaims against Plaintiffs Tuna Family Mgmt Inc. ("Tuna Family"), Kenneth D. Gibbs III ("Gibbs") and Rachelle Risley ("Risley") as follows:

---

[3] As damages, Plaintiffs seek specified amounts with respect to Counts 4-6 and 9 and unspecified damages with respect to Count 10. DE 83 at 34-36, 42-43, 45. Plaintiffs seek the following as to other Counts:

- Counts 1 and 2: (i) a preliminary and permanent injunction prohibiting Defendants Sidharth Sethi ("Sidharth"), Mad Twist LLC ("Mad Twist") and All Trust Management Inc. ("All

| Count | Cause of Action | Against |
|---|---|---|
| 1. | Breach of Contract-License Agreement | Tuna Family |
| 2. | Fraud in the Inducement - $1.75MM Promissory Note | Gibbs /Risley |
| 3. | Negligent Misrepresentation | Gibbs /Risley |
| 4. | Fraud in the Inducement - $1.75MM Sidharth Gty Agmt | Gibbs /Risley |
| 5. | Negligent Misrepresentation - $1.75MM Sidharth Gty Agmt | Gibbs /Risley |
| 6. | Fraud in the Inducement - Amit Guaranty Agreement | Gibbs /Risley |
| 7. | Negligent Misrepresentation - Amit Guaranty Agreement | Gibbs /Risley |
| 8. | Fraud in the Inducement - $490k Promissory Note | Gibbs /Risley |
| 9. | Negligent Misrepresentation - $490k Promissory Note | Gibbs /Risley |
| 10. | Fraud in the Inducement - $490k Sidharth Gty Agmt | Gibbs /Risley |
| 11. | Negligent Misrepresentation - $490k Sidharth Gty Agmt | Gibbs /Risley |
| 12. | Tortious Interference | Tuna Family/ Gibbs/ Risley |
| 13. | Breach of Contract-Indemnification | Gibbs /Risley |
| 14. | Breach of Contract (Stock Sale Agreement) | Gibbs /Risley |
| 15. | Conversion | Gibbs /Risley |

Trust") from continuing to use or reference Plaintiffs' trademark "THE TWISTED TUNA" in connection with their business; and (ii) actual and enhanced damages under 15 U.S.C. § 1117 as well as Sidharth's and All Trust's profits. *Id.* at 26-27, 29-30.

- Count 3: compensatory and punitive damages and rescission of the Licensing Agreement. *Id.* at 32.

- Count 7: a declaration that Plaintiff Tuna Family Mgmt Inc. is entitled to terminate the License Agreement. *Id.* at 38-39.

- Count 8: a declaration "[t]erminating the [licensing] agreement as a result of the licensee's material breach . . . and/or . . . alternatively, requiring specific performance under the licensing agreement." *Id.* at 40-41.

DE 84 at 31, 54-55, 57, 59, 61, 63, 65, 67-68, 70, 72-73, 75-76, 78.

Plaintiffs filed their Motion for Preliminary Injunction on June 16, 2021. DE 95. The case has been slow-moving, and the parties have routinely requested extensions of deadlines and schedules, which the Court has granted.[4] *See e.g.*, DE 49, 54-56, 58, 60, 64, 77, 97-100, 104, 105, 112, 113. As such, the case is presently stayed pending the parties' submission of a proposed scheduling order that would set a trial date in early 2022.[5] DE 113.

Plaintiffs Kenneth D. Gibbs III and Richelle Risley opened the Twisted Tuna restaurant (the "Restaurant") in 2014. DE 84 at 33, ¶15; DE 85 at ¶15. They owned the Restaurant through All Trust Management, Inc. ("All Trust"). DE 86-2 at ¶1; DE 91 at ¶1. In 2017, the Restaurant was listed for sale. DE 109 at 5, ¶3; DE 116 at ¶3. On or about June 28, 2018, Defendant Mad Twist, through Defendant Sidharth Sethi, entered into a contract to purchase the Restaurant ("Sales Transaction"). DE 86-2 at ¶4; DE 91 at ¶4. The closing took place on November 29, 2018. DE 86-2 at ¶12; DE 91 at ¶12. The Sales Transaction was to be effectuated through a stock sale of All Trust to Defendant Mad Twist. DE 86-2 at ¶4; DE 91 at ¶4. Thus, Defendant Mad Twist, which is owned and operated by Defendant Sidharth, along with Defendant All Trust (which had been purchased by Mad Twist) (collectively, the "Buyer"), purchased 100% of the Restaurant's stock for $3,000,000 and also purchased certain real estate used as a parking lot for the Restaurant for

---

[4] In In January 2021, the parties indicated that they were engaged in settlement discussions, which apparently have not resulted in resolution of the disputes. DE 61 at ¶3.

[5] The parties have also submitted motions for partial summary judgment, which remain pending. On April 12, 2021, Plaintiffs submitted a motion for partial summary judgment as to Counts 2-11 and 14 of Defendants' counterclaims; or, in the alternative to strike claims related to the lease issues in those Counts. DE 86 at 1. On August 30, 2021, Defendants filed a motion for partial summary judgment as to Counts 1, 2, 4-6 and 9 as well as Defendants' Ninth Defense related to the promissory notes and collateral. DE 102 at 4.

$850,000.  DE 103 at ¶7; DE 109 at ¶7.  In addition, the parties executed a $1,750,000 note (the "$1.75MM Note") on November 29, 2018, bringing the total purchase price for the Restaurant and parking lot at closing to $5,600,000.  DE 103 at ¶7; DE 109 at ¶7.

Contemporaneously with the closing of the subject restaurant sale, a licensing agreement ("Licensing Agreement") was executed on November 29, 2018 by Plaintiff Tuna Family as licensor ("Licensor") and Defendant All Trust as licensee ("License").  DE 86-2 at ¶20; DE 91 at ¶20; DE 84 at 54, ¶80; DE 85 at ¶80.  The Licensing Agreement constitutes an enforceable contract between Defendant All Trust and Plaintiff Tuna Family.  DE 84 at 54, ¶81; DE 85 at ¶81. Defendant All Trust is owned and controlled by Defendant Mad Twist (collectively, the "Licensee").  *Id.*  The grant of the License is limited to a ten-mile radius from the address of the the Restaurant in Port Salerno, Florida ("Territory").  DE 86-2 at ¶22; DE 91 at ¶22.  Licensor has exclusive rights to the Trademark outside the Territory; however, it cannot compete with the Licensee within the Territory.  *Id.*  In fact, Plaintiff Tuna Family granted Defendant All Trust an exclusive license for use in the Territory to allow it to use the Intellectual Property to make, use and apply the Trademark in the course of its business.  DE 91 at ¶81; DE 94 at ¶81.  Also, Plaintiff Tuna Family agreed to provide updated operating procedures, new recipes and any other information necessary to successfully operate the business.  *Id.*

"As consideration for the Licensing Agreement, the Licensor [sic] is required to pay ten dollars a month as a licensing fee."  DE 86-2 at ¶27; DE 91 at ¶27.  The Licensing Agreement defines Intellectual Property to include the "Trademark and any intellectual property relating to the Trademark, including any patent, patent application, copyright, industrial design, tradenames, any rights to patent, copyright, industrial design or trademark in any country, engineering designs,

5

concepts, models, Operations Manual, trade secrets, know-how and show how . . ..." DE 86-2 at ¶30 (quoting Exh F at ¶1.2(c)); DE 91 at ¶30.

The Licensing Agreement includes provisions restricting the Licensee from: (a) contesting the validity of the Licensor's rights in the Intellectual Property outside the Territory; (b) taking actions which might impair or interfere with the Licenor's rights in the Intellectual Property outside the Territory; (c) associating or commingling the Intellectual Property with other intellectual property without the Licensor's prior consent; (d) using the Intellectual Property in an unauthorized manner; and (e) seeking to register any trademark, copyright or industrial design registration anywhere in connection with the Intellectual Property or similar property. DE 109 at 8, ¶¶23(a)-(d); DE 116 at ¶¶23(a)-(d). In addition, the Licensing Agreement reads: "Licensee shall not use the Trademark in a fashion that the Licensor deems to be contrary or may cause a detriment to the brand or concept of the Trademark." DE 86-2 at ¶31; DE 91 at ¶31. The License Agreement also includes provisions to allow regular and unscheduled onsite visits to the Restaurant for inspection of the operations, purchases, policies, preparation, inventory, equipment, recipes, financial, POS system, etc. DE 86-2 at ¶25; DE 91 at ¶25. Further, the Licensing Agreement provides a thirty-day right to cure a default after receipt of formal notice of same. DE 86-2 at ¶28; DE 91 at ¶28. Defendants have not paid the fees owed under the Licensing Agreement for over a year. DE 86-2 at ¶35 (citing Exh A at ¶18); DE 91 at ¶35.

## LEGAL STANDARD FOR A PRELIMINARY INJUNCTION

Preliminary injunctions "serve to maintain the status quo until a final decision on a matter can be reached." *United States v. DBB, Inc.*, 180 F.3d 1277, 1282 (11th Cir. 1999); *see also Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) (explaining that the focus in

maintaining the status quo is on preventing irreparable injury).[6] Furthermore, "[i]njunctive relief is an extraordinary remedy." *FHR TB, LLC v. TB Isle Resort, LP.*, 865 F. Supp. 2d 1172, 1191 (S.D. Fla. 2011) (citing *Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir.1993)). "To succeed on its Motion, [a moving party] must demonstrate by a preponderance of the evidence that [(i)] it is likely to succeed on the merits of its claims; [(ii)] it will suffer irreparable harm in the absence of injunctive relief; [(iii)] the threatened injury outweighs any potential harm to [respondent] as a result of the injunction; and, [(iv)] the injunction will not be adverse to the public interest." *Id.* (citing *Schiavo v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir.2005)). "If [movant] fails to carry its burden as to any one of the elements, the Court must deny the Motion." *Id.* at 1191-92. Moreover, "[t]he decision to grant an injunction rests within the sound discretion of the district court and will not be disturbed absent abuse of discretion." *Id.* at 1192 (citing *Haitian Refugee Ctr., Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir.1995)).

"A preliminary injunction is typically prohibitive in nature if it seeks to maintain the status quo by prohibiting a party from taking certain action pending resolution of the case. But when the injunction would force a party to act, and not simply maintain the status quo, it becomes mandatory." *Gayle v. Meade*, No. 20-21553, 2020 WL 1949737, at *22 (S.D. Fla. Apr. 22, 2020), *report and recommendation adopted in part*, No. 20-21553-CIV, 2020 WL 2086482 (S.D. Fla. Apr. 30, 2020), *order clarified*, No. 20-21553-CIV, 2020 WL 2203576 (S.D. Fla. May 2, 2020) (citation omitted). A moving party's burden is heightened with respect to a mandatory or affirmative injunction. *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2017 WL 2417960,

---

[6] "In *Bonner v. City of Prichard*, [the Eleventh Circuit] adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1310 (11th Cir. 2020) (citing 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)).

at *3 (S.D. Fla. June 2, 2017), *report and recommendation adopted,* No. 16-24918-CIV, 2018 WL 10436231 (S.D. Fla. Mar. 13, 2018), *aff'd*, 760 F. App'x 684 (11th Cir. 2019) (citations omitted). Indeed, a movant seeking a mandatory injunction "must make a 'clear' showing on each of the four elements of the injunction" rather than merely by a preponderance of the evidence. *Gayle*, 2020 WL 1949737 at 22. "Given this perspective, courts generally *disfavor* mandatory injunctions." *Id.* (citations omitted) (emphasis in original).

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). "An injury is 'irreparable' only if it cannot be undone through monetary remedies. *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

Also, "a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citations omitted). Therefore, "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* (citations omitted).

## DISCUSSION

Plaintiffs request a preliminary injunction on the basis that Defendants exceeded the scope of their trademark license under the Licensing Agreement. DE 95 at 9-11. Specifically, Plaintiffs contend that Defendants are using the mark "TWISTED TUNA" to identify their restaurant and bar services outside of their licensed territory, including with respect to Defendants' Fysh Bar &

8

Grill restaurant to be opened in Port Orange, Florida. *Id.* at 3-5, 10-11. Plaintiffs also contend that Defendants are violating their Licensing Agreement in other ways, i.e., using unauthorized social media accounts and changing the menu and t-shirt design without permission. *Id.* at 15. Therefore, Plaintiffs seek an injunction to (i) "prohibit . . . use or reference to . . . 'THE TWISTED TUNA' in connection with [Defendants'] business in violation of the License Agreement during the duration of this litigation," and (ii) "enjoin[ ] . . . continued breaches of the Licensing Agreement."[7] *Id.* at 17.

Defendants argue that the Motion for PI fails for four reasons. First, Defendants contend that the motion suffers from a lack of urgency to show irreparable harm because Plaintiffs sought preliminary injunctive relief more than 17 months after the lawsuit was initiated on January 16, 2020. DE 96 at 3-4. Second, Defendants argue that Plaintiffs cannot demonstrate a substantial likelihood of success on their trademark infringement claim because they have not offered evidence to demonstrate a likelihood of consumer confusion based upon Defendants' new restaurant concept.[8] *Id.* at 4. Third, Defendants argue that the injury to Plaintiffs is outweighed

---

[7] In their Reply, Plaintiffs argue that Defendants failed to address why the Motion for Preliminary Injunction should not be granted on the basis of Florida contract law as opposed to trademark law. DE 101 at 2. Plaintiffs' Motion, however, is largely based upon federal trademark law. See DE 95 at 7-14. Furthermore, with respect to the breach of contract issues, the Motion fails to even discuss the elements of a breach of contract claim. Therefore, even if Defendants did not address why the Motion should not be granted on the basis of Florida contract law, Defendants were not required to make Plaintiffs' argument for them and then respond to it.

[8] Defendants argue that the Motion for PI is a pretext to interefere with Defendants' opening of a new restaurant in Port Orange, Florida. DE 96 at 4. Defendants contend that a letter of intent on or about June 25, 2019 regarding the potential development of a Twisted Tuna restaurant in Port Orange, Florida is not proof that they violated the Licensing Agreement as Plaintiffs charge. *Id.* at 7. Rather, say Defendants, the letter of intent was contemporaneous with Defendant Sidharth's discussions with Plaintiffs about using the Twisted Tuna trademark for a restaurant in Port Orange. *Id.* at 7. Defendants aver that they immediately ceased using the Twisted Tuna mark in connection with this opportunity when negotiations with Plaintiffs broke down and changed the new restaurant's name to Fysh Bar & Grill. *Id.*

by the damage that will occur to Defendants if Defendants are precluded from promoting and opening their new restaurant. *Id.* Fourth, Defendants contend that Plaintiffs' requested remedy – to prohibit Defendants from referencing the "Twisted Tuna" in connection with Defendants' business in violation of the Licensing Agreement during the pendency of this litigaion – is vague.[9] *Id.* Specifically, Defendants argue that it is unclear what conduct violates the agreement because it is ambiguous. *Id.* Therefore, according to Defendants, the ambiguity can only be resolved at trial and cannot be the subject of a temporary injunction. *Id.*

As discussed further below, I find that Plaintiffs have failed to carry their burden to establish the prerequisites for a preliminary injunction. Specifically, Plaintiffs fail to demonstrate a likelihood of success on their trademark infringement claim. Also, as Defendants argue, Plaintiffs fail to show irreparable harm because of their delay in seeking injunctive relief. Furthermore, Plaintiffs fail to make the requiste "clear" showing for entitlement to a preliminary injunction on the breach of contract claims for purposes of "enjoining" Defendants from violating the Licensing Agreement through unauthorized social media accounts, menu items and t-shirts.[10] These findings are discussed in further detail below.

---

[9] In particular, Defendants argue that referencing truthfully that they own and operate the Twisted Tuna restaurant in Port Salerno, Florida is not violative of the Licensing Agreement. DE 86 at 5.

[10] Although Plaintiffs use the term "enjoin," I find that Plaintiffs are seeking affirmative relief to mandate Defendants' compliance with the Licensing Agreement. Plaintiffs confirm that they are seeking affirmative relief in a footnote by stating that they "are seeking an injunction under state law with respect to negative breach of contract issues." DE 95 at n.7. *See DiabloSport, LLC v. Granatelli Motor Sports, Inc.*, No. 605CV312ORL31DAB, 2005 WL 2465019, at *1 (M.D. Fla. Oct. 6, 2005) ("Under Florida law, an injunction against the breach of a contract is a negative decree of specific performance of the agreement, and the general rule in such cases is that the court's power to grant such relief is governed by the same rules that govern its power to grant an affirmative decree of specific performance.").

**I.  Whether Plaintiffs Demonstrate a Substantial Likelihood of Success**

Plaintiffs request a preliminary injunction on the basis of federal trademark infringement and breach of contract under Florida law.  I consider Plaintiffs' trademark infringement claim before turning to the breach of contract issue.

**A.  Trademark Infringement**

I do not find that Plaintiffs make the requisite showing on their trademark infringement claim to warrant a preliminary injunction.  "In order to prevail on a trademark infringement claim, a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use is likely to deceive, cause confusion, or result in mistake." *Music With Mar., LLC v. Mr. Froggy's Friends, Inc.*, No. 8:20-CV-1091-T-33TGW, 2020 WL 6395293, at *6 (M.D. Fla. Aug. 4, 2020), *report and recommendation adopted*, No. 8:20-CV-1091-T-33AAS, 2020 WL 6393851 (M.D. Fla. Sept. 1, 2020) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998)) (internal quotation marks omitted). "Additionally, a licensor is required to make some type of showing that the licensor properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the unauthorized use of trademarks by the licensee." *Id.* (quoting *McDonald's Corp.*, 147 F.3d at 1308) (internal quotation marks omitted).

Although it is undisputed that Plaintiffs own the trademark at issue, Plaintiffs did not terminate the Licensing Agreement.  Indeed, Plaintiffs seek recission of the agreement through their litigation or a declaration that they can terminate it or specific performance.  DE 83 at 32, 40-41.  As the Court in *Music With Mar., LLC* stated, proper termination of a Licensing Agreement makes the unauthorized use clear.  2020 WL 6395293 at *6.  In the case at bar, the parties dispute that the Licensing Agreement has been breached, and Plaintiffs have not taken action to terminate

the Licensing Agreement based upon the alleged breaches, including the alleged breach that Defendants used the mark outside the permitted Territory. Therefore, the unauthorized use has not been made clear. On this basis alone, Plaintiffs fail to meet the requisite standard for a preliminary injunction based upon federal trademark infringement.

In addition, however, Plaintiffs fail to sufficiently demonstrate customer confusion. Plaintiffs specifically allege that Defendants are using the trademark to promote their new restaurant, Fysh Bar & Grill, outside the Territory. DE 95 at 4-6, 10-11. As current evidence, Plaintiffs point to two newspaper articles and a vendor email-solicitation to demonstrate customer confusion. Plaintiffs cite to one of eight pictures in a March 10, 2021 article in The Daytona Beach News-Journal, which was published in the on-line edition on March 11, 2021, reporting on the groundbreaking ceremony for Defendants' Port Orange, Florida restaurant. DE 95 at 4-5. The picture depicts a table filled with platters of sushi and trays of food, along with two waterbottles featuring the Twisted Tuna logo. According to Plaintiffs, this photograph shows that Fysh Bar & Grill "continues to promote Twisted Tuna branded merchandise (e.g., branded cup in center) and food items in their advertisements." DE 95 at 4-5. Plaintiffs argue that attendees at the event or readers of the article could easily have noticed the Twisted Tuna emblem on the water bottles and confused it with Plaintiffs' trademark. *Id.* at 5. Outside of the the two branded cups that are depicted, Plaintiffs fail to identify any other violative merchandise or describe how the food depicted infringes upon Plaintiffs' trademark. Without more, two branded cups appearing in one picture of an article containing eight pictures of a groundbreaking event does not sufficiently demonstrate the likelihood of customer confusion.

Additionally, Plaintiffs point to another newspaper article dated April 29, 2021, where Defendants are quoted as stating that the Fysh Bar & Grill will be "somewhat based" on the

Twisted Tuna.  DE 95 at 5; DE 95-8.  In reviewing the article, however, it goes on to state that "[t]he menu will feature American, Japanese and Italian dishes along with a raw bar highlighting local fresh fish options, crabs and oysters.  Among the dessert choices will be a gelato station for both dine in and takeout."  DE 95-8 at 3.  Plaintiffs do not comment how anything else in the article, including the described menu, creates the potential for customer confusion.  Defendants' remark about the Fysh Bar & Grill being "somewhat based" on the Twisted Tuna, without more, does not establish a likelihood of customer confusion.

Plaintiffs also contend that customer confusion is shown because one vendor contacted Plaintiffs regarding the Port Orange restaurant, apparently believing it was a Twisted Tuna enterprise.  In an email dated May 20, 2021, the vendor wrote Gibbs as follows regarding a "Ground Lease Development Opportunity" for a "Waterfront Resturant Site":

> We are looking for a 20 year term + renewals.  Asking price is $150/year.  We will allow some credit back for rent to offset construcion costs.  I was talking to Port Orange City Manager earlier this week and he was telling us about your project.  I think you could be a great fit for the Port as well.

DE 95 at 5; DE 95-8.  The vendor's email, dated May 20, 2021, comes well after the newspaper articles to which Plaintiffs point.  Thus, the vendor's email does not appear to support customer confusion on the basis of those articles.  Furthermore, Plaintiffs do not explain why the vendor thought the Port Orange City Manager was communicating about Plaintiffs' project.  Again, without more, the vendor's email does not demonstrate customer confusion due to Defendants' use of the Twisted Tuna trademark with respect to Fysh Bar & Grill.

Meanwhile, Defendants aver that the concept for the Fysh Bar & Grill is not a violation of the Licensing Agreement.  DE 92 at 19.[11]  Defendants contend that their concept – a waterfront

---

[11] Defendants' Response incorporates by reference pages 14-20 of its response to Plaintiffs' motion for partial summary judgement.  DE 96 at 17, n.6.

seafood restaurant – will bear no more than a passing similarity to the concept behind the Twisted Tuna. DE 96 at 3. Further, Defendants argue that Plaintiffs are attempting to interfere with their "plans to open an independently-branded restaurant in Port Orange, over 160 miles from the nearest of the two Twisted Tuna-branded restaurants" because Plaintiffs "simply do not want the Defendants to open a new restaurant." *Id.* Defendants contend that Plaintiffs' allegations, rather than establish a likelihood of customer confusion or potential loss of customers and goodwill, represent unresolved factual disputes that must necessarily be addressed at trial. Although I do not go so far at this juncture as to say that Plaintiffs' allegations must be resolved at trial, I do find that Plaintiffs fall short of demonstrating a likelihood of success on their trademark infringement for purposes of a preliminary injunction on grounds of customer confusion.

## B. Breach of Contract

Plaintiffs also fail at this juncture to clearly establish a likelihood of success on their breach of contract claims. As Defendants argue, Plaintiffs fail to discuss the elements for a claim of breach of contract in seeking to enjoin breaches of, or to mandate Defendants' compliance with, the Licensing Agreement.[12] DE 96 at 4. Therefore, because Plaintiffs offer no legal argument in support of their motion for preliminary injunction as to the breach of contract claims, Plaintiffs have failed to carry their burden to show a substantial likelihood of success on the merits of such claims. *Learning Experience Sys., LLC v. Foxborough Child Care, LLC*, No. 10-80561-CIV, 2010

---

[12] Plaintiffs argue that Florida law is identical to federal law with respect to the standard for granting injunctions related to breach of contract issues and discuss the breach of contract claim in terms of Florida's standards. DE 95 at 14-16. Despite the similarilty in the standards, I find that an analysis of the breach of contract issues properly applies the federal law standard for a preliminary injunction. *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (determining it appropriate, even when outcome determinative, to "apply federal procedure to determine whether [a] preliminary injunction was properly issued").

WL 3565712, at *5 (S.D. Fla. Aug. 19, 2010), *report and recommendation adopted*, No. 10-80561-CIV, 2010 WL 3565708 (S.D. Fla. Sept. 9, 2010) (recommending denial of plaintiff's motion for preliminary injunction as to breach of contract because of plaintiff's failure to discuss: the elements of such a claim, how plaintiff met the elements and how defendants' purported breach entitles plaintiff to injunctive relief). Even presuming *arguendo* that Plaintiffs had discussed the standard for a breach of contract under Florida law, however, I find that Plaintiffs' factual proffers are insufficient to establish the elements of such a claim.

"For a breach of contract claim, Florida law requires the plaintiff to prove: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Centennial Bank v. ServisFirst Bank Inc.*, No. 8:16-CV-88-T-36JSS, 2016 WL 7325545, at *14 (M.D. Fla. May 17, 2016), *report and recommendation adopted*, No. 8:16-CV-88-T-36JSS, 2016 WL 4238766 (M.D. Fla. Aug. 11, 2016) (citing *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009)). Here, although it is undisputed that the Licensing Agreement is a valid contract, Plaintiffs fail to establish a material breach or damages with respect to the agreement. *Gayle*, 2020 WL 1949737 at 22.

First, Plaintiffs argue that, despite numerous requests to cease doing so, Defendants have set up separate social media accounts and "have even posted information harmful to the brand such as violation[s] of Covid-19 protocols."[13] DE 95 at 15. As Defendants argue, Plaintiffs do not

---

[13] In Plaintiffs' statements of fact for their motion for partial summary judgement, Plaintiffs allege that Defendants violated local laws relating to Covid-19 restrictions pursuant to the Martin County Code and the laws of the State of Florida by tolerating customers not wearing masks and not social distancing. DE 86-2 at ¶34(e). Plaintiffs also include in their exhibit attachment posts from a Facebook page reflecting six (6) customers complaining about lack of masking and unsafe distancing and cleaning protocols. DE 86-3 at 186-94. The dates of the posts are not identifiable. A response is reflected to one of the posts stating "we do our best to enforce social distancing guidelines . . . [a]ll our staff can do is advise people to follow the guidelines . . . [t]he tables and capacity guidelines are being followed." *Id.* at 186.

describe with any specificity the conduct, which indicates that Defendants violated Covid-19 protocols, or the specific regulations, ordinances or laws that apply to the conduct. DE 92 at 17. Outside of Defendants allegedly posting information indicating possible violations of unspecified Covid-19 protocols based upon several customer complaints, Plaintiffs fail to otherwise describe how the social media accounts are harmful to the brand. Even with respect to the customer complaints on facebook expressing Covid-19 concerns, Plaintiffs fail to specify what harm has resulted from these social media posts. Some might consider inviting customers to post their concerns on social media a positive in that the feedback allows a business to be responsive to customer concerns. Plaintiffs also fail to cite the specific provisions of the Licensing Agreement that Defendants purportedly violated with respect to the social media accounts. Nor do Plaintiffs explain what damages have ensued from such alleged breaches. Moreover, Defendants argue that Plaintiffs fail to put forth any evidence that they followed the notice-and-cure provisions in the Licensing Agreement, which are required to be followed before a breach may be declared. DE 92 at 17. Indeed, Plaintiffs do not even assert that they followed the notice-and-cure provision. Accordingly, I find that Plaintiffs fail to meet the standard of clearly demonstrating probable success on a breach of contract claim as a result of Defendants' separate social media accounts.

Second, Plaintiffs argue that Defendants have changed the menu without permission, including changing prices and adding new food items (thus commingling intellectual property) without permission. As Defendants argue, the Licensing Agreement does not include "menus" as Intellectual Property nor does the agreement require Plaintiffs' prior approval to change menu items. DE 92 at 20. Furthermore, Plaintiffs do not describe how such changes are inconsistent with, or contrary to, the brand. *Id.* Plaintiffs also fail, again, to identify damages resulting from

16

the menu changes. As such, I do not find that Plaintiffs have clearly established a substantial likelihood of success on a breach of contract claim as a result of Defendants' menu changes.

Third, Plaintiffs argue that Defendants have repeatedly changed T-shirt design without permission, despite numerous requests to cease doing so. Plaintiffs say no more than this; therefore, they fail to identify the provision(s) of the Licensing Agreement that Defendants violated, fail to indicate how the changes are inconsistent with or contrary to the brand, and fail to identify that any damages resulted from the T-shirt design changes. Accordingly, I find that Plaintiffs fall short of clearly demonstrating a substantial likelihood of success on a breach of contract claim with respect to the Licensing Agreement on grounds of changes in T-shirt design.

"If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Fibertex Corp. v. New Concepts Distributors Int'l, LLC*, No. 20-CV-20720, 2020 WL 8458852, at *4 (S.D. Fla. Oct. 19, 2020), *report and recommendation adopted*, No. 20-20720-CIV, 2021 WL 302645 (S.D. Fla. Jan. 29, 2021) (quoting J*ohnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (internal quotation marks omitted). Thus, Plaintiffs' Motion for Preliminary Injunction may be denied on this basis alone.

## II. Whether Plaintiffs Will Suffer Immediate and Irreparable Injury

Having unduly delayed in bringing their Motion, Plaintiffs fail to demonstrate immediate and irreparable Injury. They also fail to show why they cannot be adequately compensated by an award of damages for the alleged breaches of contract. With respect to delay, Defendants correctly argue that Plaintiffs fail to establish irreparable injury due to their lack of timeliness in bringing their motion for preliminary injunction. DE 96 at 3-4. "[R]elevant to [an] alleged irreparability of [ ] harm[ ] is timeliness. The Second Circuit has observed, and others [have] agreed, that

'[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic speedy action.'" *Great Am. Ins. Co. v. Fountain Eng'g, Inc.*, No. 15-CIV-10068-JLK, 2015 WL 6395283, at *4 (S.D. Fla. Oct. 22, 2015) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) and collecting other cases).

In the instant case, Plaintiffs filed suit in January 2020 (DE 1) and then filed their Motion for PI in June 2021 (DE 95), *after* they filed a motion for partial summary judgment (DE 86). Although Plaintiffs explain that the Covid-19 pandemic assuaged their concern about Defendants "pursuing the Fysh Bar & Grill endeavor," this does not explain why Plaintiffs filed a Complaint in January 2020 that requested a preliminary injunction but did not file a motion for such relief. DE 1 at 21. Furthermore, the breach of contract issues pertaining to social media accounts, menus and T-shirts were ongoing according to Plaintiffs, yet these breaches did not prompt Plaintiffs to seek preliminary injunctive relief before at least a period of several months, if not much longer, passed following the alleged breaches. "To be sure, a delay in seeking a preliminary injunction militates against a finding of irreparable harm." *Delivery.com Franchising, LLC v. Moore*, No. 20-20766-CIV, 2020 WL 3410347, at *13 (S.D. Fla. June 19, 2020), *report and recommendation adopted*, No. 20-20766-CIV, 2020 WL 4464674 (S.D. Fla. July 14, 2020) (citing *Wreal, LLC*, 840 F.3d at 1247. Thus, Plaintiffs' delay precludes a finding that a preliminary injunction is warranted to prevent irreparable harm.

Second, "[a]s the Eleventh Circuit has made clear, an "injury is 'irreparable' only if it cannot be undone through monetary remedies." *Pro Premium Fin. Co., Inc. v. US Premium Fin. Serv. Co., LLC*, No. 0:16-CV-60009-UU, 2016 WL 8679311, at *1 (S.D. Fla. Oct. 24, 2016)

(citing, among other authority, *Ne. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Plaintiffs have not shown that monetary remedies will be inadequate for their breach of contract claims. "An award of damages is the most common remedy for a breach of contract." *Learning Experience Sys., LLC*, 2010 WL 3565712 at n.5 (citing, among other authority, *Mobil Oil Exploration and Producing Southeast, Inc. v. United States*, 530 U.S. 604, 629 (2000) and noting that, while injunctive relief may be ordered in certain circumstance, plaintiff offered no discussion in this regard). Because Plaintiffs do not address why monetary damages cannot remedy the alleged breaches of contract, I find that Plaintiffs have not carried their burden with respect to demonstrating irreparable harm. Therefore, for the reasons stated above, I conclude that Plaintiffs are not likely to suffer immediate and irreparable injury if the injunction is not issued to enjoin Defendants from breaching the Licensing Agreement.

## CONCLUSION

Accordingly, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Preliminary Injunction (DE 95) is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 13th day of October, 2021.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE